Jesus A. TRINIDAD, Plaintiff–Appellant,

v.

SOUTHERN PACIFIC TRANS-
PORTATION COMPANY,
Defendant–Appellee.

No. 90–8673.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1991.

Charlotte Costan, Burbank, Cal., R. Edward Pfiester, Jr., Los Angeles, Cal., for plaintiff-appellant.

David S. Jeans, Karl O. Wyler, III, Kemp, Smith, Duncan & Hammond, El Paso, Tex., for defendant-appellee.

Before GOLDBERG, SMITH, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Plaintiff–Appellant Jesus Trinidad seeks review of an adverse jury verdict in his personal injury suit against Southern Pacific Transportation Company. This case

presents us with a question of first impression: whether the brake provisions of the Safety Appliance Act (the Act), 45 U.S.C. §§ 1–16, apply to trains during predeparture inspection. Because we find the sections inapplicable, we affirm the judgment of the district court.

Appellant, a carman for Southern Pacific, was performing the final steps of a routine brake inspection on the night he was injured. The inspection was performed in accordance with the Code of Federal Regulations, which requires that after a train is made up, its brakes must be tested for air leaks. 49 C.F.R. § 232.12(a)(1)(i) (1988). The regulation sets a specific procedure for testing for leaks. *Id.* §§ 232.12(c) & (d). If an air leak is detected, a carman must repair it and notify the engineer, who then repeats the test. Once the inspection is complete, "the engineman and conductor must be notified that train is in proper condition to proceed." *Id.* § 232.12(g).

During the inspection in question, Appellant detected and repaired an air leak in the brake system of a tank car. Pursuant to inspection procedure, Appellant proceeded to inform the engineer of the problem. Appellant drove to the head of the train, left his truck, and as he walked across a set of tracks between his truck and the stationary train, he was hit by a "cut" of cars being moved up this track.

Appellant asserted a negligence claim under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, and strict liability claims under the Safety Appliance Act, 45 U.S.C. §§ 1–16, and the Boiler Inspection Act, 45 U.S.C. §§ 17–23. Later Appellant dropped his FELA and Boiler Inspection Act claims and advanced on the strength of his Safety Appliance Act claim alone.

Appellant argued that because he was injured while attempting to notify the engineer of an air leak, the air leak (an alleged defect under the Act) was a legal cause of his injury. The train inspected by Appellant, not the cars that hit him, thus, was the subject of the trial. At the close of

arguments, the judge read to the jury sections 1 and 9 of the Act, the sections governing brakes, and 49 C.F.R. § 232.12, the regulation governing inspections. The jury returned a verdict for Southern Pacific, finding no violation of the Act.

Appellant seeks review of the jury verdict, alleging that 1) Southern Pacific's closing argument was prejudicial, 2) the judge improperly instructed the jury, and 3) the judge responded incorrectly to the jury's inquiries about its instructions. We need not address these challenges because we find that the Act's brake provisions are inapplicable to the train inspected by Appellant. Because Appellant's case rested solely on the Act, we affirm the judgment against him.

■ The Safety Appliance Act imposes strict liability on railroads for violations of the Act's safety standards. *Crane v. Cedar Rapids & I.C. Ry.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969). Sections 1 and 9 control air and power driving wheel brakes, while other sections govern appliances such as couplers and draw bars. 45 U.S.C. §§ 2 & 5. Section 1 forbids a railroad "to use on its line" any locomotive with defective brakes or "to run" any train with defective brakes. Section 9, which incorporates by reference section 1, applies to trains "used, hauled, or permitted to be used or hauled. . . ." Thus, for the sections to be applicable, a train must be "in use," "running," or being "hauled."

■ Congress amended the Act in 1988.[1] Prior to that, section 1 referred to locomotives "in moving interstate commerce." Consequently, most of the cases discussing the Act's applicability do so in terms of "movement." But though the statute referred to "movement," the courts' application of the law has turned on the nature of the trains' activities rather than the presence of motion alone. Generally, courts have not applied the Act to trains involved in switching operations—those procedures

---

1. Rail Safety Improvement Act of 1988, 102 Stat. 624, 630 (1988). The parties and the court were unaware of the amendment at the time of trial.

by which the cars and engines are uncoupled, moved, and reassembled—even though such trains are in motion. *See United States v. Northern P. Ry.*, 254 U.S. 251, 254–55, 41 S.Ct. 101, 102, 65 L.Ed. 249 (1920). Trains that have completed the switching process, and departed for their destinations, however, are subject to the Act's requirements, whether or not they are actually in motion when the defect occurs. *See New York, N.H. & H. Ry. v. Leary*, 204 F.2d 461, 465 (1st Cir.), *cert. denied*, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 370 (1953).

Although the Act's language has changed, the distinction between switching and train operations established in older cases remains relevant in determining whether a train is "in use" or "being run" for the purposes of the Act. The initial inspection of a train, however, appears to fall squarely between the switching and post-departure categories. Surprisingly, courts have not previously examined the nature of initial inspections. And though Appellant proffers two cases seemingly on point, we are not persuaded that they control the outcome of this case.

Appellant asserts that the holding in *Brady v. Terminal R. Ass'n*, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614 (1938), governs our inquiry into the Act's applicability. In *Brady*, a railroad employee was injured while inspecting a train "placed on a receiving track temporarily pending the continuance of its journey." *Id.* at 13. The issue in *Brady*, thus, was whether the train's "use had ended" during this temporary stop. *Id. Brady* is inapposite to the case at bar, as this case involves the question whether the train had passed from the assembly phase to the "in use" phase. The *Brady* train was in the midst of its journey when the injury occurred; it "had not been withdrawn from use." *Id.* at 15. The Southern Pacific train, in contrast, had yet to depart for its destination when Appellant was injured; it had not yet been put into use.

The second inspection case cited by Appellant, *Angell v. Chesapeake & O. Ry.*, 618 F.2d 260 (4th Cir.1980), also is distinguishable. In *Angell*, an employee inspecting an assembled train was injured by an engine's defective air-brake valve. Because the district court refused to apply the Safety Appliance Act, *id.* at 261 n. 1, the case was tried under the Boiler Inspection Act. On appeal, the court held that the engine, which had been serviced, inspected, and "okayed" before the accident, fell within the purview of the Boiler Inspection Act. *Id.* at 262. The facts of *Angell*, however, vary significantly from those of the instant case. The engine in *Angell*, unlike the tank car in question, was subject to an inspection before it was added to other engines and connected to the rest of the train. Based on the fact that the engine had passed inspection, the *Angell* court distinguished its holding from several decisions that denied coverage to workers *engaged* in the inspection and maintenance of engines. *Id.* at 261 & n. 2. The difference distinguishes our case as well.

■ Like many courts before us that have examined this statute, we are without precedents "of any clear and controlling effectiveness." *United States v. Panhandle & S.F. Ry.*, 203 F.2d 241 (5th Cir.1953). So like our predecessors, we must determine our case on its facts alone. The record reflects that the train inspected by Appellant was assembled in Southern Pacific's Alfalfa yard. At the time of Appellant's accident, it had not moved from that spot because it had not been released following inspection because the inspection was not yet complete. Absent any authority to the contrary, we do not believe that this train, at this stage, was "in use." Because the train was not in use, it was not covered by sections 1 and 9 of the Act. Appellant's theory of recovery rested entirely on a violation of section 1 or 9. The judgment in favor of Appellee, therefore, is

AFFIRMED.