Filed:  September 29, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-2731
(CA-96-3525-WMN)

Dennis Deans,

Plaintiff - Appellant,

versus

CSX Transportation, Incorporated,

Defendant - Appellee.

O R D E R

The court amends its opinion filed August 11, 1998, as follows:

On page 4, second full paragraph, line 11 -- the comma after the word "use" is changed to a period.  The word "such" is changed to begin with a capital letter:  "... not 'in use').  Such a distinction ...."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DENNIS DEANS,
<u>Plaintiff-Appellant,</u>

v.

No. 97-2731

CSX TRANSPORTATION,
INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-96-3525-WMN)

Argued: June 5, 1998

Decided: August 11, 1998

Before WIDENER, ERVIN, and WILLIAMS, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Ervin wrote the opinion, in which Judge Widener and
Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Lawrence Alan Katz, COFFEY & KAYE, Bala Cynwyd,
Pennsylvania, for Appellant. Stephen Bennett Caplis, WHITEFORD,
TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.
**ON BRIEF:** Joseph A. Coffey, Jr., COFFEY & KAYE, Bala Cyn-
wyd, Pennsylvania, for Appellant. Douglas F. Murray, WHITE-

FORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

Dennis Deans, who was injured while working as a conductor for defendant CSX Transportation, Inc. ("CSX"), appeals the district court's grant of summary judgment against him on his claims under the Federal Safety Appliances Act ("FSAA"), 49 U.S.C. § 20301 et seq., and the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

I.

On June 10, 1995, Deans and his engineer were assigned to take a train from Grafton, West Virginia to Cumberland, Maryland. When Deans arrived at the Grafton East Yard, the railroad cars making up the train were already coupled together. Before the train could leave for Cumberland, however, Deans still had three tasks to accomplish: couple the engines to the railcars, release the hand brakes that were on the railcars, and conduct a pre-departure air brake test.

Deans successfully coupled the engine to the railcars and then, prior to conducting the air brake test, he attempted to release the hand brakes. He released the hand brakes on the first one or two cars without incident, but when he pulled the hand brake on a coal hopper, nothing happened. Deans then went on to release the hand brakes on the remaining few cars before making a further attempt to release the brake that was stuck. On his fourth attempt to release the hand brake, Deans felt a jolt in his neck and spine. The brake, however, still failed to release. The defective car was removed from the train, the air brake test was performed, and Deans proceeded to help take the train from Grafton to Cumberland. When the train arrived in Cumberland, Deans asked to be taken to the hospital due to the pain from his injuries. CSX subsequently inspected the hand brake and found it to be defective.

2

Deans alleges that he has suffered permanent back and neck injuries as a result of the accident. He filed suit against CSX, alleging that CSX was liable for his injuries under the Federal Safety Appliances Act, for requiring him to work with a defective railcar, and that CSX was negligent in failing to provide him with a safe workplace pursuant to the Federal Employers' Liability Act. CSX filed a motion for summary judgment, which the district court granted on the grounds that the railcar on which Deans was injured was not "in use" at the time of the accident, as required under the FSAA, and that Deans had provided no evidence that CSX was negligent, as required to establish a claim under FELA. This appeal followed.

II.

Deans argues that the district court erred in concluding, as a matter of law, that the railcar upon which he was injured was not "in use" for purposes of the Federal Safety Appliances Act at the time of his accident. Because we find that the railcar was indeed "in use" at the time Deans was injured, we reverse the district court's grant of summary judgment on the FSAA claim.

The Safety Appliances Act imposes absolute liability on railroad carriers for violations of the Act's safety standards. Crane v. Cedar Rapids & I.C. Ry., 395 U.S. 164, 166 (1969). One of these applicable standards states that:

> [A] railroad carrier may use or allow to be used on any of its railroad lines --
>
> (1) a vehicle only if it is equipped with --
>
> (B) ... efficient hand brakes....

49 U.S.C. § 20302(a). Absolute liability under the Act only attaches, however, if the train is "in use" at the time of the accident. See Trinidad v. Southern Pacific Transp. Co., 949 F.2d 187, 188 (5th Cir. 1991) (looking at earlier version of Safety Appliances Act, 45 U.S.C. § 1 et seq. (repealed 1994)); see also Angell v. Chesapeake & Ohio Ry. Co., 618 F.2d 260, 262 (4th Cir. 1980) (referring to substantially

3

similar "in use" requirement of Boiler Inspection Act, 45 U.S.C. § 23 (1994)). Because the facts surrounding the accident are not in dispute, whether the train may be deemed to have been "in use" at the time of the accident for the purposes of the FSAA is a question of law for a court to decide rather than a question of fact for a jury, Angell, 618 F.2d at 262; see also McGrath v. Consolidated Rail Corp., 136 F.3d 838, 842 (1st Cir. 1998) (referring to Boiler Act), and this court therefore reviews the district court's conclusion de novo, see Williams v. Dep't of Veterans Affairs, 104 F.3d 670, 673 (4th Cir. 1997).

One might think that determining whether a train is"in use" would be a fairly straightforward exercise. In actual practice, however, it is anything but clear where to draw the line for purposes of the FSAA. Faced with this difficulty, the district court looked to the analysis set out by the Fifth Circuit in Trinidad v. Southern Pacific Transporation Co., 949 F.2d 187 (5th Cir. 1991), in which a carman was injured while performing the final steps of a routine brake inspection that was required before the train could be turned over to the conductor. Relying on the fact that the train had not been released for travel because the required inspections had not yet been completed, the Trinidad court found that the train was not "in use" at the time of the carman's accident. Id. at 189. In reaching its decision, the Trinidad court distinguished its facts from Angell v. Chesapeake & Ohio Railway Co., 618 F.2d 260 (4th Cir. 1980), in which this court found a train engine to be "in use" because the engine had already passed inspection and been "okayed" for service. Trinidad, 949 F.2d 189.

Analogizing the facts in this case to Trinidad, the district court noted that the air brake test had yet to be completed at the time of Deans's injury and no movement of the train was imminent, and therefore concluded that the train that injured Deans was not "in use" at the time of the accident. J.A. at 116. This focus on the completion of the air brake test suggests that the district court sought to draw a useful and practical, bright-line distinction between trains which have had their pre-departure inspections and tests completed and been okayed for service (and are therefore "in use"), and those for which pre-departure tests have not yet been completed (and therefore not "in use"). Such a distinction is too facile to accurately reflect the multitude of steps required -- and various sequences in which these steps may be taken -- to prepare a train for departure. For example, while

4

the district court here concluded that the train was not "in use" at the time of Deans's injury because the train would not be "okayed" for service until the air brake test was completed and, at the time of the accident that had not yet been done, the record shows that there is no relationship between the release of the hand brakes, during which activity Deans was injured, and the performance of the air brake test; it apparently does not matter whether the hand brakes were released before the air brake test was run. See Deans Dep. at 27, in J.A. at 38 (Q: "Could you have done the air test first and then released the brake second?" A: "I could have."). Therefore, under the district court's analysis, the train here -- which had already passed its required inspections -- would have been okayed for service and hence "in use" if Deans had simply chosen to conduct the air brake test prior to releasing the hand brakes.

It is inappropriate to base liability under the FSAA on the mere happenstance of whether an employee chooses to release the hand brakes or conduct an air brake test first, however, and we believe a more consistent and fairer result is reached by looking at a number of different factors, rather than simply at the completion or non-completion of pre-departure tests. Therefore, to determine whether a train is "in use" for purposes of the FSAA, the primary factors we consider are where the train was located at the time of the accident and the activity of the injured party. Cf. Pinkham v. Maine Cent. R.R. Co., 874 F.2d 875, 882 (1st Cir. 1989) (stating that these were "determinative factors" in deciding whether train was in use for Boiler Act purposes).

A train may still be considered "in use" even though it is motion-less and not yet on the main track. Brady v. Terminal R.R. Ass'n, 303 U.S. 10, 13 (1938). In this case, although the train had not yet begun moving on the main track, it had already had its engine coupled to it and was standing on a track in the rail yard in preparation for imminent departure -- not in storage or waiting to be moved into a repair location. The train here was therefore even closer to actual motion than the train found to be "in use" in Angell, where the employee was injured as he was moving an engine in order to couple it to a train to be moved a few hours later. 618 F.2d 262.

Furthermore, Deans, as a conductor, was part of the transportation crew and in no way involved in the repair or maintenance of the train.

5

It was his job to help put the train into motion and, at the time of his injury, he was attempting to release the hand brakes to do exactly that. The fact that the air brake test still needed to be completed, a test that could have been completed prior to the release of the hand brakes, is not in this case dispositive. Cf. McGrath v. Consolidated Rail Corp., 136 F.3d 838, 842 (1st Cir. 1998) (finding train "in use" even though all pre-departure inspections not yet completed because injured employee's inspection duties were "incidental to[the employee's] task of operating the train as an engineer" (citations omitted)); see also Angell, 618 F.2d at 262 (holding train could be "in use" even before engineer took the controls). We therefore hold, as a matter of law, that the train was "in use" at the time of Deans's injury and reverse the district court's grant of summary judgment on Deans's FSAA claim.

III.

Deans also contends that the district court erred in granting summary judgment to CSX on his Federal Employers' Liability Act claim, arguing that the carrier had an affirmative duty to inspect the hand brake before his injury and its failure to do so was negligent. Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmovant, there remains no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c); Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). As a question of law, we review the district court's grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).

FELA provides, in pertinent part, that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in [interstate] commerce," 45 U.S.C. § 51, and grants compensation to railroad employees for work-related injuries if "such injury or death [results] in whole or part from the negligence of any officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track ... or other equipment," id. However, while it is true that FELA imposes on the railroad carrier a duty to take reasonable precautions to inspect the workplace and protect its employees from possible danger, see Brown v. CSX

6

Transp., 18 F.3d 245, 249 (4th Cir. 1994), the plaintiff still carries the burden of proving some act of negligence by the carrier, see Hurley v. Patapsco & Black Rivers R.R. Co., 888 F.2d 327, 329 (4th Cir. 1989).

The only evidence that Deans has produced of CSX's negligence here is the fact that a post-injury inspection of the hand brake demonstrated that it was defective and his assertion that "the same inspection, performed before [he] was required to use defective equipment, would have prevented his crippling injury." Appellant's Br. at 29. Deans introduced no evidence to show that an earlier inspection would have revealed or cured the problem with the hand brake, or that the railroad had notice of the defect prior to the accident. As a consequence of this lack of evidence, any suggestion that CSX was negligent rests on mere speculation and conjecture, and the district court therefore properly granted summary judgment against Deans on his FELA claim. See Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 818 (4th Cir. 1995) ("It is the duty of the Court to withdraw the case from the jury when [the plaintiff's contention] is so tenuous that it rests merely upon speculation and conjecture."); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party ... cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.").

IV.

Because we find that the train on which Deans was injured was "in use" for the purposes of the FSAA, we reverse the district court's grant of summary judgment on his FSAA claim. We affirm summary judgment on Deans's FELA claim, however, because Deans failed to establish a genuine issue of material fact that CSX's negligence led to his injury.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

7