**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STEVE JAMES HALL,
Plaintiff-Appellant,

v.

No. 98-1661

NORFOLK & WESTERN RAILWAY
COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-97-476)

Argued: January 25, 1999

Decided: April 20, 1999

Before WIDENER, MURNAGHAN, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Francis Paul Hajek, WILSON, HAJEK & SHAPIRO,
P.C., Virginia Beach, Virginia, for Appellant. Leslie Edwin Hagie,
WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia,
for Appellee. **ON BRIEF:** Richard N. Shapiro, WILSON, HAJEK &
SHAPIRO, P.C., Virginia Beach, Virginia, for Appellant. Frank K.
Friedman, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Steve James Hall appeals the district court's grant of judgment as a matter of law, see Fed. R. Civ. P. 50(a), in favor of his employer Norfolk and Western Railway Company (N&W) on his claims under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60. We affirm.

I

N&W is a common carrier railroad corporation involved in intra-state and interstate commerce. Each N&W train has air brakes, which "are regulated by a flow of air produced by the[train's] air compressors and supplied to each car via the train line." (J.A. 33). To apply the train's air brakes, the "locomotive engineer operates an automatic brake valve on the control stand which reduces air flow into the train line and activates the air brake system, causing the brake shoes to be applied." Id.

At the end of each train car is a valve, called an "angle cock," which controls the flow of air through the train's brake line, and is manually operated by a handle. A brakeman or conductor operates the angle cock by turning the handle ninety degrees. When the angle cock is open, the train's "air brake system is activated because of the release of air pressure in the train line." Id. When the angle cock is closed, the "air flow to the cars on the opposite side of the angle cock from the engine locomotive" is stopped, and the brakes on those cars are fully engaged. Id. Closing the angle cock allows a brakeman or conductor to move the cars on the opposite side of the angle cock from one track to another track.

Hall began working for N&W as a brakeman in 1986. Hall received on-the-job training and also participated in a week-long

2

training program in 1986, involving classroom study of and field instruction on N&W's safety rules for operating a train's air brake system.**1** Of relevance, N&W's training program provides instruction on operating an angle cock, and requires new employees to demonstrate the operation of an angle cock for the training instructor. During the eight months Hall served as a brakeman, he operated numerous angle cocks.

After eight months as a brakeman, Hall became a conductor for N&W and worked as a conductor for approximately the next eight years, during which time he operated hundreds of angle cocks. On March 25, 1995, Hall served as conductor of N&W's Train 457 traveling from Lynchburg to Roanoke, Virginia. On that day, in Lynchburg, Train 457 picked up car WC86029, which was owned by Wisconsin Central Railroad, but had come onto N&W's line a week earlier in Chicago, Illinois--March 18, 1995. At the Chicago interchange, when car WC86029 came onto N&W's line, N&W's trainmen performed a visual inspection of car WC86029's angle cock, an older model plug-type angle cock. The visual inspection did not reveal any defect of car WC86029's angle cock.

On March 25, 1995, after Train 457 picked up car WC86029, but before Train 457 left Lynchburg, the train's engineer David Weeks checked the air brake system on Train 457 and found"no problem at all." (J.A. 186). When Train 457 arrived in Roanoke that evening, it was too long to store on one track, and therefore, Hall and Weeks were instructed to "cut" Train 457 and store it on two tracks. Around 9:30 p.m., Hall went to "cut" Train 457 by closing the angle cock on car WC86029, thereby cutting the air pressure to the cars behind car WC86029 and allowing such cars to be moved to a different track.

_____

**1** One of N&W's safety rules is Rule M, which provides:

> Employees must exercise care to avoid injury to themselves or to others. They must make certain that equipment and tools that they use in performing their duties are in proper condition. If any item is found to be defective, employees must report the defect to the supervising officer and, if feasible, employees must restore the item to a safe condition.

(J.A. 312).

Hall did not notice anything out of the ordinary prior to attempting to close the angle cock. Nor did he test the angle cock before attempting to close it. When he attempted to close the angle cock on car WC86029 with his left hand, Hall injured his left shoulder because the angle cock was "frozen," and thus, would not close. (J.A. 137). Hall requested Weeks to call a supervisor, and Steve Nettermeyer, a Yard Conductor at the Roanoke Terminal, arrived on the scene shortly thereafter. Nettermeyer was also unable to close the angle cock on car WC86029. A later post-accident inspection revealed that the angle cock on car WC86029 was "frozen" due to internal corrosion and had likely been in such condition for several weeks prior to Hall's March 25, 1995 injury.

Subsequently, Hall filed an action in the Circuit Court of the City of Roanoke against N&W under FELA and the Federal Safety Appliance Act (FSAA), 49 U.S.C. §§ 20301-06, for the injuries that he had sustained on March 25, 1995, when he had attempted to close the defective angle cock on car WC86029. On N&W's motion, the Circuit Court of the City of Roanoke granted summary judgment for N&W on Hall's FSAA claim. Thereafter, Hall nonsuited his remaining FELA claims.

Then, on July 8, 1997, Hall filed this action in the United States District Court for the Western District of Virginia against N&W under FELA and FSAA for the injuries that he had sustained on March 25, 1995, when he had attempted to close the defective angle cock on car WC86029. Prior to trial, on N&W's motion, even though the res judicata doctrine effectively barred the pursuit of Hall's FSAA claim, the district court granted summary judgment for N&W on Hall's FSAA claim on the merits. Hall's FELA claims proceeded to trial. At trial, Hall averred that N&W violated FELA by breaching its duty to provide him with a safe place in which to work by: (1) failing to manually inspect the angle cock on car WC86029; (2) failing to adequately train him to close an angle cock with gradual force; and (3) failing to warn him that an angle cock could be resistant to closing. In support of his claims, Hall introduced evidence of eleven prior incidents occurring during the five years prior to his injury during which N&W employees were injured closing resistant angle cocks, and Hall also presented the expert testimony of Daniel Feneziani.

4

Feneziani testified that a manual inspection should have been performed on the angle cock on car WC86029.

At the close of Hall's evidence, N&W moved for judgment as a matter of law, see Fed. R. Civ. P. 50(a), on Hall's FELA claims, asserting that there was no legally sufficient basis for the jury to find that N&W breached its duty to provide Hall with a safe place in which to work. The district court granted the motion, and Hall appeals.

II

On appeal, Hall contends that the district court erred in granting N&W's motion for judgment as a matter of law on his FELA claims. Specifically, Hall claims that the district court erred in concluding that N&W did not violate FELA because N&W breached its duty to provide him with a safe place in which to work by: (1) failing to perform a manual inspection of the angle cock on car WC86029; (2) failing to train him to turn an angle cock with gradual force; and (3) failing to warn him that an angle cock could be resistant to closing.

We review a district court's grant of a Rule 50(a) motion for judgment as a matter of law de novo, examining the evidence in the light most favorable to the non-moving party. See Brown v. CSX Transp. Inc., 18 F.3d 245, 248 (4th Cir. 1994). A district court should grant a Rule 50(a) motion for judgment as a matter of law during a jury trial, after a party has been fully heard on an issue, only if it determines, without weighing the evidence or considering the credibility of the witnesses, that "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed. R. Civ. P. 50(a). In a FELA action, we will affirm a district court's grant of a Rule 50(a) motion for judgment as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to have found that the employer was negligent. See id.

In pertinent part, FELA provides, "Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in [interstate] commerce." 45 U.S.C. § 51. FELA allows recovery to railroad employees for work-related injuries if such injury or death results "in whole or part from

5

the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." Id. "However, while it is true that FELA imposes on the railroad carrier a duty to take reasonable precautions to inspect the workplace and protect its employees from possible danger, the plaintiff still carries the burden of proving some act of negligence by the carrier." Deans v. CSX Transp. Inc., 152 F.3d 326, 330 (4th Cir. 1998) (internal citations omitted); see also Inman v. Baltimore & O. R.R., 361 U.S. 138, 140 (1959) (stating that railroad employers are not the insurers of their employees).

"The Supreme Court has observed that the FELA does not define negligence and therefore leaves the question to be determined by common law principles as established and applied by the federal courts." Brown, 18 F.3d at 249. Under Fourth Circuit case law, in order for a plaintiff to establish liability under FELA, the plaintiff must prove that he was injured while in the scope of his employment, his employment was in furtherance of his employer's interstate transportation business, his employer was negligent, and his employer's negligence caused, at least in part, the injury for which compensation is sought. See id.; see also 45 U.S.C. § 51.

From the record, it is clear that Hall was within the scope of his employment when he was injured, and that his work was in furtherance of N&W's business. Thus, it is only necessary for us to address the issues of N&W's alleged negligence and whether the alleged negligence was a cause of Hall's injury. In order to prove negligence, Hall must prove the traditional common law elements of negligence: duty, breach of duty, foreseeability, and causation. See Brown, 18 F.3d at 249.

It is uncontested that while N&W is not the insurer of its employees, it had a non-delegable duty to provide Hall with a safe place in which to work. See id. "This duty includes inspecting the workplace and taking reasonable precautions to protect employees from possible harm." Id.

A

Hall contends that N&W's duty to provide him with a safe place in which to work required it to perform a manual inspection of the

6

angle cock on car WC86029 when it joined the N&W line in Chicago on March 18, 1995, or thereafter. According to Hall, his evidence of other N&W employees who were injured while operating angle cocks and Feneziani's expert testimony that a manual inspection of the angle cock on car WC86029 should have been performed, established that N&W had a duty to perform a manual inspection of the angle cock on car WC86029.

It is uncontested that the angle cock on car WC86029 was defective, and that Hall was injured while attempting to operate the defective angle cock. The parties have stipulated that the angle cock on car WC86029--which was visually inspected when it joined N&W's line on March 18, 1995--was "inoperable because of corrosion inside the angle cock" and had likely been "in that condition for at least several weeks prior to March 25, 1995." Thus, the question is whether N&W had a duty to perform a manual inspection of the defective angle cock on car WC86029.

We conclude that there was no legally sufficient evidentiary basis for a reasonable jury to have found that N&W's duty to provide Hall with a safe place in which to work required it to perform a manual inspection of the angle cock on car WC86029. First, federal regulations did not require a manual inspection of angle cocks. See 49 C.F.R. § 232.17(b)(1) (requiring railroads to maintain freight brake equipment "in a safe and suitable condition"); 49 C.F.R. § 232.14 (requiring railroads to make a visual inspection of the "position of angle cocks").

Second, Hall's evidence of eleven incidents occurring within the five years prior to Hall's March 25, 1995 injury, during which N&W employees were injured while operating angle cocks, did not create a duty for N&W to perform a manual inspection of the angle cock on car WC86029 when it arrived on its line on March 18, 1995. Ten of the eleven incidents that Hall introduced involved angle cocks that were resistant to closing, and one of the incidents involved an angle cock that would not close because it was frozen. Hall's expert Feneziani admitted on cross-examination, however, that during the five years in which these eleven angle cock incidents occurred, N&W employees operated millions of angle cocks without being injured. Eleven incidents during the five years prior to Hall's injury failed to

7

create a duty for N&W to perform a manual inspection not required by the relevant federal regulations.**2**

Third, Feneziani's testimony that a manual inspection of the angle cock on car WC86029 should have been performed is of no help to Hall. Feneziani testified that "ten years ago" railroads performed manual inspections of its line at interchange points and that railroads should perform manual inspection of "plug-type" angle cocks at interchange points because "there are few of them and[they are] known to be obstinate and leak." (J.A. 237, 242-43). While Feneziani testified that railroads used to and could today perform manual inspection of an angle cock at interchange points, Feneziani admitted that the present industry practice is to perform a visual inspection to ensure that the angle cock's handle is properly positioned so that the train's

_____

**2** Hall argues that the district court erred in excluding evidence of ten additional prior incidents in which N&W employees were injured while operating angle cocks, and that the district court erred in allowing Feneziani to testify on cross-examination that millions of angle cocks were turned without incident during the five years prior to Hall's injury. These arguments are without merit.

With respect to the additional prior incidents, we find that the district court's exclusion of the ten additional prior incidents was not an abuse of discretion. See Persinger v. Norfolk & Western Ry., 920 F.2d 1185, 1187 (4th Cir. 1990). First, the evidence of the ten additional prior incidents was cumulative, because the evidence of the eleven incidents already introduced established that N&W had notice that employees were injured while operating angle cocks. See Fed. R. Evid. 403. In any event, in our view, assuming the exclusion of the ten additional incidents was error, the error was harmless. See Fed. R. Civ. P. 61 (commanding us to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties").

With respect to Feneziani's testimony on cross-examination that millions of angle cocks were turned during the five years prior to Hall's injury, Hall failed to object to the admission of this testimony at trial, and, thus, we review his claim for plain error. See Owens-Illinois, Inc. v. Rapid American Corp., 124 F.3d 619, 631 (4th Cir. 1997) (applying the plain error test from United States v. Olano , 507 U.S. 725, 732-37 (1993), in the civil context). We find that the admission of such testimony was not plain error because the testimony was relevant to establish whether N&W had a duty to perform a manual inspection of angle cocks.

8

air brakes will operate. Feneziani further admitted that he would not have written a brakeman up for not manually checking or inspecting an angle cock. Also, Feneziani testified that while plug-type angle cocks are no longer used as a replacement on railroad cars, there was no requirement that plug-type angle cocks be removed or replaced on existing cars. Considering Feneziani's testimony as a whole, it is clear that his opinion that N&W should have performed a manual inspection of the angle cock on car WC86029 did not establish that N&W had a duty to perform a manual inspection of the angle cock.

In sum, we conclude that there was no legally sufficient evidentiary basis for a reasonable jury to have found that N&W's duty to provide Hall with a safe place in which to work required it to perform a manual inspection of the angle cock on car WC86029.

B

Hall also contends that N&W breached its duty to provide him with a safe place in which to work by failing to train him to turn an angle cock with gradual force and by failing to warn him that an angle cock could be resistant. Assuming arguendo that N&W had a duty to train Hall to operate angle cocks and warn him of dangers associated with angle cocks, we conclude that there was no legally sufficient evidentiary basis for a reasonable jury to have found that N&W breached such duties. N&W provided classroom instruction on and field demonstrations of safety rules for operating a train's air brake system, including instruction and demonstration of the proper operation of an angle cock. Even though Hall claims that he did not specifically recall being trained to close an angle cock slowly or being warned that an angle cock might be difficult to close, Hall admitted that he went through N&W's standard training class, recalled being instructed to use gradual slow pressure when "opening an angle cock," (J.A. 138), and recalled watching a video instructing him to use a firm stance when operating an angle cock. Furthermore, Hall admitted that prior to his March 25, 1995 injury, he was aware, through his nine years' experience with angle cocks, that angle cocks might be difficult to turn. After reviewing the evidence, we conclude that there was no legally sufficient evidentiary basis for a reasonable jury to have found that N&W breached its duty to train Hall in the proper operation of angle

9

cocks or failed to warn him of the dangers associated with the opera-
tion of angle cocks.**3**

_____

**3** Hall contends that the district court erred in dismissing his FELA
claims because it applied the assumption of risk defense, which has been
eliminated from FELA cases, see 45 U.S.C.§ 54, and dismissed his
FELA claim based upon Hall's assumption of risk and contributory neg-
ligence. Specifically, Hall contends that the district court improperly
considered whether Hall was contributorily negligent for violating Rule
M. Hall also contends that the district court improperly considered
whether Hall assumed the risk of danger because an angle cock was a
simple tool, see Jones v. Lamm, 69 S.E.2d 430, 433 (Va. 1952) (holding
that an employer has no obligation to inspect a tool if the tool is simple
such that an employee could discover defects).

In our opinion, Hall misreads the district court's decision. First, the
district court took great pains to clarify that in dismissing Hall's FELA
claims, it was not considering Hall's actions:

> Hall's conduct is _irrelevant_ to the disposition of this case
> because it would go to the issue of comparative negligence. _I am_
> _not dismissing this case because Hall was negligent._ I am dis-
> missing this case _solely because N&W was not negligent in any_
> _way_.

(J.A. 75) (emphasis added). Thus, the district court's opinion makes clear
that it was not dismissing Hall's FELA claims because Hall assumed a
risk or was contributorily negligent for violating Rule M. Second, the
district court's discussion of Rule M and the simplicity of the angle cock
was relevant to its conclusion that N&W was not required to perform a
manual inspection of the angle cock on car WC86029. In discussing Rule
M, the district court was merely recognizing that N&W had, in accor-
dance with Association of American Railroads Rule 1, see (J.A. 239)
(stating "railroad is responsible for all cars on its line, or the condition
of all cars on its lines"), imposed its own safety rules to govern railroad
interchanges. The district court was in no way dismissing Hall's FELA
claims based upon Hall's possible violation of Rule M, and the district
court took great pains to clarify its decision. Finally, in discussing the
simplicity of an angle cock, the district court was merely concluding that
N&W's visual inspection was reasonable. Thus, contrary to Hall's con-
tentions, and as clearly spelled out by the district court, the district court
dismissed Hall's FELA claims _not_ because of Hall's conduct, but
because it determined that N&W had not breached its duty to provide
Hall with a safe place in which to work.

III

Because we conclude that there was no legally sufficient evidentiary basis for a reasonable jury to have found that N&W breached its duty to provide Hall with a safe place in which to work, we affirm the district court's grant of judgment of a matter of law for N&W on Hall's FELA claims.

<u>AFFIRMED</u>

_____

Finally, Hall contends that the district court erred in granting N&W's motion <u>in limine</u> to exclude one of Hall's experts, Michael Shinnick, from testifying as to how N&W could have altered its training program to reduce angle cock injuries. We have reviewed Hall's claim and find it to be without merit.

11