UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

─────────────────

Nos. 97-2669(L)
(CA-95-2000-MJG)

─────────────────

Jeffrey D. Phillips,

Plaintiff - Appellant,

versus

CSX Transportation, Incorporated,

Defendant - Appellee.

─────────────────

O R D E R

─────────────────

The court amends its opinion filed September 3, 1999, as follows:

On page 6, footnote 2, line 5 -- the citation to <u>Trinidad v. Southern Pacific</u> is corrected to end "(<u>5th</u> Cir. 1991)."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEFFREY D. PHILLIPS,
<u>Plaintiff-Appellant,</u>

v.

CSX TRANSPORTATION,
INCORPORATED,
<u>Defendant-Appellee,</u>

and

CSX TRANSPORTATION,                                   No. 97-2669
INCORPORATED,
<u>Defendant & Third Party Plaintiff,</u>

and

PROCOR ALBERTA, INCORPORATED;
FALCONBRIDGE, LIMITED; UNION TANK
CAR COMPANY,
<u>Third Party Defendants.</u>

JEFFREY D. PHILLIPS,
<u>Plaintiff-Appellee,</u>

v.

                                                      No. 97-2750

CSX TRANSPORTATION,
INCORPORATED,
<u>Defendant-Appellant,</u>

and

CSX TRANSPORTATION,
INCORPORATED,
<u>Defendant & Third Party Plaintiff,</u>

and

PROCOR ALBERTA, INCORPORATED;
FALCONBRIDGE, LIMITED; UNION TANK
CAR COMPANY,
<u>Third Party Defendants.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-95-2000-MJG)

Argued: March 4, 1999

Decided: September 3, 1999

Before NIEMEYER and WILLIAMS, Circuit Judges, and
SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Reversed by published per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Earl Stanley Murphy, MOODY, STROPLE & KLOEP-
PEL, INC., Portsmouth, Virginia, for Appellant. Stephen Bennett
Caplis, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore,
Maryland, for Appellee. **ON BRIEF:** William J. Moody, Jr.,
MOODY, STROPLE & KLOEPPEL, INC., Portsmouth, Virginia, for
Appellant. Eric R. Harlan, WHITEFORD, TAYLOR & PRESTON,
L.L.P., Baltimore, Maryland, for Appellee.

**OPINION**

PER CURIAM:

This case involves a suit under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60, based on a violation of the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. §§ 20301-06. The district court granted summary judgment in favor of Jeffrey Phillips, holding that CSX Transportation violated the FSAA and was strictly liable for the injury that Phillips sustained as a result of the violation. In light of our decision in Deans v. CSX Transportation, Inc., 152 F.3d 326 (4th Cir. 1998), we find that the FSAA did not apply under the circumstances of Phillips's injury, and we reverse the district court's summary judgment order and grant summary judgment in favor of CSX.

I.

On July 20, 1994, Jeffrey Phillips was injured while performing his duties as a brakeman for CSX Transportation. At the time of his injury, Phillips was the foreman of a yard crew engaged in normal train switching operations at CSX's Cumberland Yard in Cumberland, Maryland. Such operations consist of taking arriving trains apart, and putting departing trains together.

The normal procedure when a train arrives at the yard is for the yard crew to disconnect all of the train's cars from one another, and to turn the cars over to the car department for a mechanical inspection. As part of its inspection, the car department checks the cars' safety appliances. If the car department discovers any defects during this inspection, it sets the defective cars aside for repair. Once the mechanical inspection is complete, the car department turns the cars back over to the yard crew. The yard crew then assembles the cars into new trains for departure. However, before a train may depart, it must undergo a predeparture inspection, which the car department also conducts. The yard crew engages the handbrakes on the cars in an assembled train, detaches the engine, and then turns the train over to the car department for the predeparture inspection. The car department inspects the train's air brakes, and again checks its safety appliances. Once the predeparture inspection is complete, the car

3

department turns the train over to the transportation crew, and the train departs.

Phillips was injured while he was engaging the handbrakes on a completed train, prior to turning the train over to the car department for its predeparture inspection. The train upon which he was working was sitting on a yard track. Phillips had set the handbrakes on three of the cars in the train, and he was climbing onto a fourth car when the handrail he was using to pull himself up gave way, causing him to fall and injure his back.

Phillips filed suit against CSX on July 7, 1995. His complaint alleged two bases for CSX's liability under FELA: 1) negligence on the part of CSX for failing to maintain a safe workplace; and 2) strict liability for CSX's failure to comply with the FSAA. The parties filed cross-motions for summary judgment on the FSAA claim. On August 6, 1996, the district court granted summary judgment in favor of Phillips on the issue of CSX's liability for violating the FSAA. Following the court's summary judgment order, Phillips abandoned his negligence claim, and proceeded to trial only on the question of damages pursuant to his FSAA claim. On August 23, 1996, the jury awarded Phillips $444,650. However, on April 25, 1997, the district court granted CSX's motion to reduce the damage award as a matter of law because Phillips's evidence of future economic loss and future medical expenses was too speculative, and his award for past economic loss failed to take into account Medicare and railroad retirement payroll deductions. Phillips's award was reduced to $76,533.54.

Phillips appeals the district court's reduction of damages, and CSX appeals the court's summary judgment order on the FSAA claim. Since we find that the district court erred in granting summary judgment in favor of Phillips and not in favor of CSX, the reduction of damages issue is moot.

II.

A.

This court reviews de novo a district court's order granting summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d

4

1162, 1167 (4th Cir. 1988). Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). A mere "scintilla of evidence" is not sufficient to withstand a motion for summary judgment. Rather, the evidence must be such that the jury reasonably could find for the nonmoving party. Anderson, 477 U.S. at 252. The court must draw all justifiable inferences in favor of the nonmoving party. Id. at 255.

B.

The FSAA imposes a number of safety requirements on railroads.[1] It is unlawful under the Act for a railroad to use railcars that are not equipped with certain mandated safety features, including automatic couplers, handbrakes, and secure steps, ladders, and running boards. 49 U.S.C. § 20302(a). In this case, the relevant requirement is that railcars be "equipped with secure grab irons or handholds on its ends and sides." Id. § 20302(a)(2).

_____

[1] Although the 1994 Federal Railroad Safety Authorization Act recodified the FSAA, the Railroad Safety Authorization Act's legislative history clearly demonstrates that the substantive provisions of the FSAA remain unchanged. See S. Rep. No. 103-265, at 1 (1994) ("The purpose of [the Railroad Safety Authorization Act] is to restate in comprehensive form, without substantive change, certain general and permanent laws related to transportation . . . ." (emphasis added)); id. at 5 ("[T]his bill makes no substantive change in the law. It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations. This fear might have some weight if this were the usual kind of amendatory legislation when it can be inferred that a change of language is intended to change substance. In codification law, however, the courts uphold the contrary presumption: the law is intended to remain substantively unchanged."). Thus, pre-1994 caselaw interpreting the FSAA applies with equal force to the current codification.

5

The FSAA does not create an independent cause of action for those injured because of a violation of the Act. Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969). However, for railroad employees injured because of a FSAA violation, FELA provides the cause of action. Id. Moreover, a FSAA violation is per se negligence in a FELA suit. In other words, the injured employee has to show only that the railroad violated the FSAA, and the railroad is strictly liable for any injury resulting from the violation. Id.; O'Donnell v. Elgin, Joliet & E. Ry. Co., 338 U.S. 384, 390-91 (1949); Deans v. CSX Transp., Inc., 152 F.3d 326, 328 (4th Cir. 1998). However, the FSAA's requirements apply to only railcars that are actually "in use." Brady v. Terminal R.R. Assn., 303 U.S. 10, 13 (1938); United States v. Northern Pac. Ry., 254 U.S. 251, 254-55 (1920); Deans, 152 F.3d at 328. As we have observed previously, the purpose of the "in use" limitation is to give railcar operators the opportunity to inspect for and correct safety appliance defects before the FSAA exposes the operators to strict liability for such defects. See Angell v. Chesapeake & Ohio Ry. Co., 618 F.2d 260, 262 (4th Cir. 1980) ("[T]he intent of the statute is to exclude from its coverage only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed.").**2** Whether a train is "in use," for purposes of the FSAA, is a question of law for the court to decide. Deans, 152 F.3d at 329.

Since Congress enacted the FSAA, the federal courts have attempted to define the outer limits of its applicability. The Act applies more broadly than simply to trains en route from their origin to their destination on main line tracks. For example, a transfer train moving on a short connecting track from one train yard to another still must satisfy the FSAA's requirements. See, e.g., United States v. Seaboard Air Line R.R. Co., 361 U.S. 78, 81-83 (1959); Northern Pac. Ry., 254 U.S. at 254-55; Louisville & Jeffersonville Bridge Co. v. United States, 249 U.S. 534, 538-40 (1919); United States v. Chicago,

_____

**2** Angell actually involved the Boiler Inspection Act, 49 U.S.C. §§ 20701-20703. However, because the "in use" language in the Boiler Inspection Act is identical to the language in the FSAA, courts have applied caselaw interpreting the Boiler Inspection Act to the FSAA, as well. See, e.g., Deans, 152 F.3d at 329 (citing Angell); Trinidad v. Southern Pac. Transp. Co., 949 F.2d 187, 189 (5th Cir. 1991) (same).

6

Burlington & Quincy R.R. Co., 237 U.S. 410, 412-13 (1915); United States v. Erie R.R. Co., 237 U.S. 402, 408-09 (1915). Moreover, a train that has reached its destination, but has not yet been turned over to the yard receiving it, is still "in use" under the FSAA. Brady, 303 U.S. at 13-14. However, the FSAA does not apply to train cars involved in switching operations. Seaboard Air Line R.R. Co., 361 U.S. at 80; Northern Pac. Ry., 254 U.S. at 254; Trinidad v. Southern Pac. Transp. Co., 949 F.2d 187, 188-89 (5th Cir. 1991).**3** Determining the point at which switching operations end and a train becomes "in use" is the key issue in this case.

The Fifth Circuit addressed this exact issue in Trinidad v. Southern Pacific Transportation Co., 949 F.2d 187 (5th Cir. 1991). In Trinidad, the plaintiff was hurt while performing an air brake inspection immediately prior to the departure of a train. The court articulated a bright-line test to determine when a train has completed switching operations and is in use, stating that a train is not in use until it is fully assembled and the crew has completed their predeparture inspection. Id. at 189. However, rather than adopt the Fifth Circuit's approach, we recently established our own standard for determining whether a railcar is in use in Deans v. CSX Transportation, Inc., 152 F.3d 326 (4th Cir. 1998). In Deans, we rejected the Trinidad bright-line test. Id. at 329. Instead, to establish whether a railcar is "in use," a court must look at "a number of different factors," the most important of which are "where the train was located at the time of the accident and the activ-

_____

**3** In Erie Railroad Co., the Supreme Court seemed to indicate in dicta that the FSAA's automatic coupler and grab iron requirements apply more broadly than the Act's air brake provision. Erie R.R. Co., 237 U.S. at 408 ("[Assembling and breaking-up trains] are not train movements but mere switching operations, and so are not within the air-brake provision. The other provisions calling for automatic couplers and grab irons are of broader application and embrace switching operations as well as train movements . . . ."). However, later opinions did not recognize such a distinction. See, e.g., Seaboard Air Line R.R. Co., 361 U.S. at 80 (citing Erie Railroad Co. for the proposition that "`switching operations' [are] not `train' movements within the meaning of the [FSAA]"); Northern Pac. Ry. Co., 254 U.S. at 254 ("A moving locomotive with cars attached is without the provision of the [FSAA] only when it is not a train; as where the operation is that of switching, classifying and assembling cars within railroad yards for the purpose of making up trains.").

7

ity of the injured party." Id. Based upon this standard, we held that a train that "already had its engine coupled to it and was standing on a track in the rail yard in preparation for imminent departure -- not in storage or waiting to be moved into a repair location" -- was in use. Id. We additionally noted that the injured employee was part of the train's transportation crew, and that at the time of his injury, he was in the process of releasing the handbrakes to put the train in motion. Id. The fact that the predeparture air brake test had not yet been completed was not dispositive. Id.

In the present case, when the district court granted summary judgment in favor of Phillips on the issue of CSX's liability for its FSAA violation, it did not have the benefit of the Deans holding to guide its decision. Therefore, we must reconsider the facts in this case in light of Deans. We find that this case differs significantly from Deans with respect to the two Deans factors. While in both cases the trains were assembled and sitting in the yard, the train in Deans was undergoing its predeparture inspection, it was coupled to its engine, its handbrakes were being released, and its departure was "imminent." Deans, 152 F.2d at 330. In this case, on the other hand, the train was about to be uncoupled from its engine, its handbrakes were being engaged, and it had yet to undergo its predeparture inspection. Moreover, the plaintiff in Deans and Phillips in this case were engaged in very different activities at the time of their injuries. The plaintiff in Deans was a member of the train's transportation crew, whereas Phillips was a member of the Cumberland yard crew. Phillips's responsibilities were limited to switching operations. Plus, the plaintiff in Deans was injured while releasing the train's handbrakes, while Phillips was hurt while engaging his train's handbrakes to prevent it from moving. Finally, in Deans we emphasized the fact that the plaintiff could have released the handbrakes after the predeparture inspection, in conjunction with the departure of the train. Id. at 329. In this case, Phillips had to engage the handbrakes prior to the predeparture inspection, in conjunction with the assembly of the train. Taken together, the facts in this case show that Phillips was injured at the end of the switching process, rather than at the beginning of the departure process.[4] Thus,

_____

[4] Phillips, himself, stated in an affidavit filed with the district court that switching operations are not complete until a train is fully assembled, its handbrakes are set, and it is turned over to the car department for the predeparture inspection. J.A. at 646 (stating that, at the time of his injury, he and his crew "had not finished our switching work").

8

in accordance with <u>Deans</u> and Supreme Court precedent, we hold that the train upon which Phillips was injured was not "in use" at the time of his injury, and summary judgment in favor of CSX, rather than Phillips, on the FSAA claim is the proper result. Accordingly, we reverse the district court's summary judgment order in favor of Phillips, and grant summary judgment in favor of CSX.

III.

As indicated above, following the district court's summary judgment order, Phillips abandoned his negligence claim under FELA. Accordingly, now that we have granted summary judgment in favor of CSX on Phillips's FSAA claim, Phillips has no remaining basis to recover any damages from CSX. Therefore, the district court's downward adjustments to Phillips's damage award are moot.

IV.

For the reasons stated above, we reverse the district court's summary judgment order, and grant summary judgment in favor of CSX as to CSX's liability under the FSAA.

<u>REVERSED</u>

9