Larry Dale Brasier appeals from a summary judgment in favor of Norfolk Southern Railway Company, Inc. We reverse and remand.
 I.
On the evening of March 7, 2001, Larry Dale Brasier was working at the Mobile North Yard as a trainman for Norfolk Southern. Brasier's job required him to "switch" railcars on the various lines and to assemble trains to run on the rail the following morning. Brasier was injured while attempting to uncouple an empty tank car from another railcar. Brasier asserts that the automatic coupler used to couple and uncouple the railcars did not operate properly.
On March 19, 2002, Brasier sued Norfolk Southern under45 U.S.C. § 51 et seq., the Federal Employer's Liability Act ("FELA"), alleging that Norfolk Southern was strictly liable for his injury because, he argued, Norfolk Southern failed to comply with the automatic-coupler provisions of the Federal Safety Appliance Act, 49 U.S.C. § 20301 ("FSAA"). Brasier also alleged that Norfolk Southern was negligent and that its negligence had caused his injury.[1]
Norfolk Southern moved for a summary judgment, arguing that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. Norfolk Southern argued that the FSAA did not apply to the subject railcar because, it asserted, at the time of the accident the railcar was not "in use," as federal courts have interpreted that term under the FSAA.
Brasier and Norfolk Southern agree that whether the railcar was "in use" is a question of law to be decided by the trial court. The trial court held that the railcar was not "in use" and entered a summary judgment in favor of Norfolk Southern. Brasier appeals.
 II.
In reviewing a trial court's ruling on a motion for a summary judgment, we apply the same standard as the trial court in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala. R. Civ. P. In this case, the material facts are not disputed; therefore the issue is whether Norfolk Southern is entitled to a judgment as a matter of law.
Congress enacted the FELA in response to the extreme physical dangers faced by railroad workers. Consolidated Rail Corp. v.Gottshall, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427
(1994). The FELA was intended to provide a federal remedy that "shifted part of the `human overhead' of doing business from employees to their employers." 512 U.S. at 542, 114 S.Ct. 2396. The Congressional intent in enacting FELA was to provide "liberal recovery for injured workers." Kernan v. American Dredging Co.,355 U.S. 426, 432, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). The FELA creates a cause of action for railroad employees based on violations of the FSAA. 45 U.S.C.A. § 51 et seq.; Crane v. CedarRapids I.C. Ry., 395 U.S. 164, 166, 89 S.Ct. 1706,23 L.Ed.2d 176 (1969). Violation of the FSAA subjects a railroad to strict liability *Page 473 
to its employees.[2] The Supreme Court of the United States has recognized that an injured railroad employee is required to prove only the statutory violation and is relieved of the burden of proving negligence:
 "The language selected by Congress to fix liability in cases of this kind is simple and direct. Consideration of its meaning by the introduction of dialectical subtleties can serve no useful interpretive purpose. The statute declares that railroads shall be responsible for their employees' deaths [or injuries] `resulting in whole or in part' from defective appliances. 45 U.S.C. § 51. And to make its purpose crystal clear, Congress has also provided that `no such employee . . . shall be held to have been guilty of contributory negligence in any case' where a violation of the [FSAA], such as the one here, `contributed to the [injury or] death of such employee.'"
Coray v. Southern Pac. Co., 335 U.S. 520, 524, 69 S.Ct. 275,93 L.Ed. 208 (1949).
An injured railroad employee is not required to prove common-law proximate causation; the employee is required to prove only that the injury resulted "in whole or in part" from the railroad's violation of the FSAA. 45 U.S.C. § 51; Rogers v.Missouri Pac. R.R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493
(1957). This Court has recognized this rule of strict liability.Shepherd v. Southern Ry., 288 Ala. 50, 57, 256 So.2d 883, 888
(1970). ("[W]here relief is claimed because of a violation of one of the Federal Safety Appliance Acts, such action is pursued or governed by the [FELA]. The violation of the [FSAA] being itself an actionable wrong, establishment of a plaintiff's right of recovery is no wise dependent upon negligence.").
According to the FSAA, a violation occurs only if a vehicle, locomotive, or train is "used":
"20302. General requirements.
 "(a) General. — Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines —
"(1) a vehicle only if it is equipped with —
 "(A) couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of vehicles. . . ."
49 U.S.C. § 20302.[3]
Courts have imposed what has been called the "in use" limitation to give *Page 474 
operators of railcars the opportunity to inspect for and correct safety-appliance defects before the FSAA exposes the operators to strict liability for defects. Phillips v. CSX Transp., Inc.,190 F.3d 285, 288 (4th Cir. 1999); Angell v. Chesapeake OhioRy., 618 F.2d 260, 262 (4th Cir. 1980) ("Congressional intent and the case law construing the statute clearly exclude those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility.").[4] While there is inconsistency in the caselaw as to when and to what this limitation applies, we find the underlying rationale to be persuasive. A railroad company should not be held strictly liable for noncompliance with the FSAA when it is in the process of inspecting for or repairing noncompliant appliances. Determining when a vehicle, locomotive, or train is "in use" is a question of law to be determined by the trial court. Angell, 618 F.2d at 262; McGrath v. Consolidated RailCorp., 136 F.3d 838, 842 (1st Cir. 1998). The cases cited by the parties vary significantly as to the location of the accident, the type of work being performed at the time of the accident, the safety appliance that caused the accident, and whether the safety appliance causing the accident was part of a vehicle, locomotive, or train.
In holding that as a matter of law the railcar that injured Brasier was not "in use," the trial court relied on a case decided by the United States Court of Appeals for the Fifth Circuit, Trinidad v. Southern Pacific Transportation Co.,949 F.2d 187, 188-89 (5th Cir. 1991), in which that court states, "[g]enerally, courts have not applied the [FSAA] to trains
involved in switching operations — those procedures by which the cars and engines are uncoupled, moved, and reassembled — even though the trains are in motion." However, United States v.Northern Pacific Ry., 254 U.S. 251, 41 S.Ct. 101, 65 L.Ed. 249
(1920), cited for that proposition by the Fifth Circuit inTrinidad, does not support that statement. Further, Trinidad
is factually distinguishable from this case. Trinidad addressed whether the brake provisions of the FSAA apply to a train during a pre-departure inspection. This case presents a different question — whether the automatic-coupler provision of the FSAA applies to railcars during the general switching (as distinguished from the pre-departure inspection) process. *Page 475 
The trial court also applied a test formulated by the United States Court of Appeals for the Fourth Circuit in Deans v. CSXTransportation, Inc., 152 F.3d 326 (4th Cir. 1998). In Deans, the Fourth Circuit stated that the primary factors in determining whether a train was "in use" are: (1) where the train is located at the time of the accident and (2) the activity of the injured party. Deans was involved in coupling an engine to railcars, releasing handbrakes on railcars, and conducting pre-departure air-brake tests. In this case, the trial court concluded that because the subject railcar was located in the yard at the time of the accident and because Brasier is a member of the yard crew, the FSAA does not apply. Brasier's case, however, is factually distinguishable from Deans in that Brasier was uncoupling cars as they came into the yard, not performing a pre-departure inspection. Further, Deans designates the two factors as the primary, not the only, factors for determining whether a train is "in use."
We conclude that when a railroad violates the FSAA and an employee is injured as a result of that violation, the railroad is shielded from strict liability when that injury occurs during the inspection, repair, or servicing of the vehicle, train, or locomotive that produced the injury. See Angell, 618 F.2d at 262. Here, the record reveals that Brasier routinely performed cursory visual inspections of railcars in the process of "switching." Brasier did visually inspect the subject railcar before his injury. However, the record shows that Brasier did not perform and was not qualified to perform mechanical tests to ensure that a safety appliance was working properly. Further, the record reveals that it is not customary to perform inspections when railcars arrive in the Mobile North Yard. The switching operation in which Brasier was engaged at the time of his injury was simply a routine operation in the use of railcars, not an inspection period. See Williams v. Norfolk Southern Ry.,126 F.Supp.2d 986, 992 (W.D.Va. 2000).
 III.
For the foregoing reasons, Norfolk Southern was not entitled to a judgment as a matter of law. We reverse the summary judgment, and we remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.
[1] Brasier did not contest Norfolk Southern's motion for a summary judgment as to the negligence claim; therefore, the negligence claim is not before us on appeal.
[2] "[N]o such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 53. "[N]o employee shall be held to have assumed the risks of his employment in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 54.
[3] 49 U.S.C. § 20302 reads as follows in its entirety:
"20302. General requirements.
 "(a) General. — Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines —
"(1) a vehicle only if it is equipped with —
 "(A) couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of vehicles;
"(B) secure sill steps and efficient hand brakes; and
 "(C) secure ladders and running boards when required by the Secretary of Transportation, and, if ladders are required, secure handholds or grab irons on its roof at the top of each ladder;
 "(2) except as otherwise ordered by the Secretary, a vehicle only if it is equipped with secure grab irons or handholds on its ends and sides for greater security to individuals in coupling and uncoupling vehicles;
 "(3) a vehicle only if it complies with the standard height of drawbars required by regulations prescribed by the Secretary;
 "(4) a locomotive only if it is equipped with a power-driving operating the train-brake system; and
"(5) a train only if —
 "(A) enough of the vehicles in the train are equipped with power or train brakes so that the engineer on the locomotive hauling the train can control the train's speed without the necessity of brake operators using the common hand brakes for that purpose; and
 "(B)at least 50 percent of the vehicles in the train are equipped with power or train brakes and the engineer is using the power or train brakes on those vehicles and on all other vehicles equipped with them that are associated with those vehicles in the train."
[4] As the United States Court of Appeals for the Fourth Circuit recognized in stating the Congressional intent regarding the "in use" limitation, Angell actually involved the Boiler Inspection Act, 49 U.S.C. §§ 20701-20703. However, because the "in use" language in the Boiler Inspection Act is identical to the language in the FSAA, courts have applied caselaw interpreting the Boiler Inspection Act to the FSAA. Phillips, 190 F.3d at 288 n. 2.