**FIRST DIVISION**
April 19, 2010

No. 1-09-1291

| | | |
|---|---|---|
| WILLIAM HARDLANNERT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 L 4660 |
| | ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY, | ) | The Honorable |
| | ) | Eileen Mary Brewer, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The plaintiff, William Hardlannert, filed this suit under the Federal Employer's Liability Act (FELA) (45 U.S.C. §51 through 60 (2000)) and the Federal Safety Appliance Act (FSAA) (49 U.S.C. §20301 et seq. (2000)) after he sustained a back injury while working on defendant Illinois Central Railroad Company's switching tracks. Hardlannert, a railroad conductor, injured his back while attempting to open an allegedly defective train knuckle, the device that allows railcars to be coupled. Following discovery, Hardlannert moved for partial summary judgment on liability under the FSAA; Judge Eileen Mary Brewer entered an order granting the motion and finding no just reason to delay appeal. Illinois Central appeals, contending that

whether Hardlannert's injury was caused solely by his own negligence is an open question of material fact that precludes summary judgment. Illinois Central also contends that as a point of law, the railcar Hardlannert was working on was not "in use" under the FSAA, to trigger its application. Based on the record evidence, no conclusion could reasonably be drawn other than Illinois Central's violation of the FSAA played a causal role in Hardlannert's injury. We also find that as an issue of law, the railcar involved was "in use" under the statute. We affirm.

BACKGROUND

In April 1999, Illinois Central hired Hardlannert as a railroad conductor, a position he continuously held during his employment. On October 10, 2005, Hardlannert was working at Illinois Central's Glen Yard on the switching tracks, where railcars are assembled with locomotives to form trains for movement. His first task that day was to switch certain railcars out of track 4.

According to his deposition, upon arriving at track 4 Hardlannert successfully coupled railcar WC 84867 to the locomotive. He then walked to the next railcar he needed to couple and opened its knuckle. To do so, he pulled on the handle of the pin lifter, which unlocks the knuckle so that it can be manually opened. He then noticed that the connecting knuckle on

railcar WC 84867 was closed. Hardlannert approached that knuckle and attempted to open it; he testified that "it's best to have both knuckles open to ensure a successful coupling because what sometimes will happen is if one knuckle is closed and one knuckle is open, [the two knuckles] will hit and close both knuckles without a tie."

According to Hardlannert, he stood facing the knuckle on railcar WC 84867 with his left foot outside the outer track and his right foot between the tracks. He then pulled on the pin lifter handle with his left hand while using his right hand to push open the knuckle. Hardlannert "was taught" to open knuckles in this fashion. When Hardlannert pulled on the pin lifter, it "stopped suddenly" and he "felt a jolt." Hardlannert testified that it was a common occurrence for a pin lifter to suddenly stop when pulled, so he attempted to lift the pin lifter a second time. However, on the second attempt the handle to the pin lifter "snapped off" in his hand, and the rest of the pin lifter fell to the ground. Hardlannert testified that during the second attempt, he "felt a pain in [his] back that [he] hadn't felt before." Hardlannert was never able to open the knuckle, but was nonetheless able to couple railcar WC 84867 with the adjacent railcar with the use of the locomotive by forcing the two railcars together. Although Hardlannert continued working for

3

approximately two hours, he was forced to report the injury when the back pain started to radiate down his legs. Hardlannert testified that at that point he "was in tears" from the severe pain. He was unable to perform his duties as a conductor after the incident and was dismissed 19 days later on October 29, 2005.

Anthony Schweitzer, Illinois Central's former senior mechanical manager, indicated at his deposition that if a pin lifter abruptly stops when pulled, it is not necessarily defective. However, Schweitzer admitted that based on the physical evidence, the lock lift of the pin lifter, which unlocks the knuckle, was likely cracked prior to the incident, constituting a defective piece of equipment.

Professor Ralph Barnett, a professor of mechanical and aerospace engineering at the Illinois Institute of Technology, signed an affidavit as Illinois Central's expert. Professor Barnett averred that the stance Hardlannert used in his effort to open railcar WC 84867's connecting knuckle was a violation of Illinois Central's safety regulations, which required employees to "keep [their] feet clear of the area under the coupler in case the knuckle should fall." Barnett believed that Hardlannert's practice of opening train knuckles in this fashion "compromised his back." Barnett noted that the two railcars could have been coupled even with only one of the two knuckles open, as occurred

4

here. He also noted that the "lock lift hook," which is attached to the end of the pin lifter, was fractured, but concluded that "the fracture of the [lock lift] hook was not a proximate cause of [Hardlannert's] back injury."

Hardlannert filed a complaint on May 4, 2006, alleging a violation of the FSAA (49 U.S.C. §20301 et seq. (2000)), for his claim under the FELA (45 U.S.C. §51 through 60 (2000)). On March 3, 2009, Hardlannert filed a motion for partial summary judgment on liability. On May 7, 2009, Judge Brewer entered an order granting Hardlannert's motion and finding no just reason for delay of this appeal.

ANALYSIS

Summary judgment is warranted when "the pleadings, depositions, and admissions on file, together with any affidavits, when viewed in the light most favorable to the nonmovant, reveal there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Midwest Trust Services, Inc. v. Catholic Health Partners Services, 392 Ill. App. 3d 204, 209, 910 N.E.2d 638 (2009), citing 735 ILCS 5/2-1005(c) (West 2000). Our review of a grant of summary judgment is de novo. DeSaga v. West Bend Mutual Insurance Co., 391 Ill. App. 3d 1062, 1066, 910 N.E.2d 159 (2009).

Causation

Illinois Central first contends that the circuit court erred in granting summary judgment on liability because whether Hardlannert's own negligence was the sole cause of his injuries remains an open question. Illinois Central contends a jury could find Hardlannert's own negligence to be the sole cause of his injuries, notwithstanding Illinois Central's concession in its response to Hardlannert's motion for summary judgment that the defective condition of the knuckle on railcar WC 84867 violated the FSAA and the regulations promulgated by the Secretary of Transportation for the administration of the FSAA. 49 U.S.C. §20302 (2000); 49 C.F.R. §215.123 (2009) (prohibiting railroad carriers from equipping railcars with defective couplers or inoperative lock lifts); see also Taluzek v. Illinois Central Gulf R.R. Co., 255 Ill. App. 3d 72, 80, 626 N.E.2d 1367 (1993) (describing the regulatory powers of the Secretary of Transportation under the FSAA).

Employees alleging injuries resulting from violations of the FSAA may maintain a private right of action under the FELA. DeBiasio v. Illinois Central R.R., 52 F.3d 678, 683 (7th Cir. 1995), citing Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166, 23 L. Ed. 2d 176, 179, 89 S. Ct. 1706, 1708 (1969). In such an action, the defendant railroad "is deprived of the

defenses of contributory negligence and assumption of risk." Crane, 395 U.S. at 166, 23 L. Ed. 2d at 180, 89 S. Ct. at 1708. However, the defendant is not liable if the plaintiff's negligence was the sole cause of his injuries (Baker v. CSX Transportation, Inc., 221 Ill. App. 3d 121, 130, 581 N.E.2d 770 (1991)), because that "eliminates the possibility that the regulatory violation contributed in whole or part to the injury" (Walden v. Illinois Central Gulf R.R., 975 F.2d 361, 364 (7th Cir. 1992)). Thus, to succeed on this theory the defendant railroad would need to prove (1) that the plaintiff was negligent, in that he acted "without the degree of care that a reasonably prudent person would have used for his or her own safety under like circumstances" (Coole v. Central Area Recycling, 384 Ill. App. 3d 390, 396, 893 N.E.2d 303 (2008)), and (2) that the plaintiff's negligence was, "by itself, the direct and immediate cause of the injury, or *** a cause which so entirely supersedes the operation of the defendant's [FSAA violation] that it alone, without the defendant's [violation] contributing thereto in the slightest degree, produces the injury" (Baker, 221 Ill. App. 3d at 130). "[The] defendant's liability is still absolute in [FELA] cases if [the] plaintiff establishes a violation of the [FSAA] and a causative relationship between the violation and his injuries." Baker, 221

7

Ill. App. 3d at 134.

Illinois Central argues that Hardlannert's "conduct in deciding to open the [connecting] knuckle" on railcar WC 84867 was negligent and a jury could find it to be the sole cause of his injury. Illinois Central does not explain how Hardlannert's "conduct" in attempting to open the knuckle was negligent. We can only surmise, without the benefit of an explanation, that Hardlannert's very decision to use the pin lifter to open the knuckle is deemed negligent conduct by Illinois Central. We fail to see how Hardlannert's attempt to open the knuckle by way of the pin lifter constituted negligence of any sort. The very presence of a handle on the pin lifter suggests this is a commonly accepted method of unlocking the knuckle on a railcar, which is precisely what Hardlannert attempted in order to couple the second railcar with railcar WC 84867. It is disingenuous for Illinois Central to suggest that using the handle on the pin lifter to open the knuckle on railcar WC 84867 made Hardlannert completely responsible for his injury without also calling into question Hardlannert's use of the handle to open the knuckle on the adjacent railcar.

We reject Illinois Central's suggestion that once one knuckle was open, Hardlannert was barred from attempting to open the knuckle on railcar WC 84867 by the same method, even though

the handle worked without a hitch in opening the knuckle of the railcar to be coupled. That the railcars could have been (and in fact were) coupled with a single knuckle being open does not mean that Hardlannert had to believe there was danger in opening both knuckles with the pin lifter; no trains were in motion at the time, and the knuckle on railcar WC 84867 appeared to be in working order. In fact, an attempt to open the knuckle with the equivalent of a pin lifter after an attempt to force the coupling of railcars with only one knuckle open does not preclude summary judgment on liability against the railroad. See Romero v. CSX Transportation, Inc., No. 06-1783, slip op. at 9 (D.N.J. December 9, 2008) (summary judgment on liability granted to railroad employee injured when railcars failed to couple automatically "upon impact," causing employee to attempt to open coupling knuckle manually). That Hardlannert did not first attempt to couple the railcars by impact cannot transform prudent conduct of attempting to open the knuckle with the pin lifter into negligent conduct, such that said conduct can be found to be the sole cause of his injury.

Illinois Central also argues that the "negligent" stance Hardlannert used in opening the knuckle was the sole cause of his injury because the stance violated a safety regulation. Once again, we disagree. See Romero, slip op. at 9 (railroad

employee's alleged violation of safety rule did not preclude summary judgment on liability against railroad because "[t]he risk of an employee going between railcars when they fail to couple upon impact is foreseeable"). It is not clear that Hardlannert even violated the safety regulation that required he "keep [his] feet clear of the area under the coupler in case the knuckle should fall." Hardlannert testified that he was taught to open knuckles in the fashion he used. His stance while opening the knuckle, with his left foot outside the outer track and his right foot between the tracks, was not a clear violation of an Illinois Central safety regulation designed to protect employees from injury should the knuckle fall. Nor is there any suggestion by Illinois Central that the safety regulation that prohibits having one foot inside the tracks contemplates protecting employees against back injuries. Even if it did, the violation of a safety regulation or statute itself does not establish negligence until that violation is shown to be a cause of the injury. Coole, 384 Ill. App. 3d at 397. It is undisputed that Hardlannert was not injured until the pin lifter handle broke in his left hand; the knuckle did not fall. Thus, Illinois Central is unable to remove its own violation of the FSAA from the causal chain that resulted in Hardlannert's back injury. No reasonable fact finder could conclude that Illinois Central's

faulty equipment was causally unrelated to the accident in order to find Hardlannert solely responsible for his injury.

Illinois Central's reliance upon the Seventh Circuit's Walden decision is misplaced. In that case, a jury found against the plaintiff in his claim for injuries he sustained while walking to his cabin seat when the train suddenly stopped during a coupling procedure. Walden, 975 F.2d at 363. Radio communications were interrupted during the coupling procedure; because the coupling procedure continued for some time without radio communications, the procedure violated the Federal Railroad Administration Radio Standards. Walden, 975 F.2d at 363, citing 49 C.F.R. §220.49. However, the court held that the jury could reasonably find the plaintiff was in an area where he knew he could not appropriately brace himself during the coupling procedure, which exposed him to possible injury should the train suddenly stop. Critical to the determination that the jury could find against the plaintiff on causation was the inescapable conclusion that the plaintiff exposed himself to the same risk of injury had the train stopped immediately when radio communications were interrupted, as required by the radio standards. In other words, the violation of the radio standards had no causal relationship to the injury the plaintiff sustained, given that the risk the plaintiff faced would have been the same.

The plaintiff should never have been in a place where he knew he could not brace himself if a sudden stop should occur. Walden, 975 F.2d at 364-65. Because a jury could find the plaintiff's actions were the sole cause of his injury, the court upheld the verdict in the defendant railroad's favor. Walden, 975 F.2d at 365.

The facts of this case bear no similarities to those in Walden. In order for this case to be similar to Walden, Illinois Central had to marshal evidence that Hardlannert would have sustained the back injury even if the handle to the pin lifter had not "snapped off" while he was attempting to open the knuckle by use of the pin lifter. Similar to Walden, Illinois Central could then argue that the defective piece of equipment, which violated the FSAA, had no causal relationship to the injury Hardlannert sustained. Of course, no such evidence was ever adduced by Illinois Central.[1]

We conclude that the record evidence, at the conclusion of

---

[1] We reject any suggestion by Illinois Central that Professor Barnett, whose expertise is engineering, is qualified to give an opinion that Hardlannert's physical actions, including his stance, entitled it to go before a jury on the otherwise unsupported claim that Hardlannert solely caused his back injury.

12

discovery, established as a matter of law, even when viewed in the light most favorable to Illinois Central, that Hardlannert's injuries were at least in part caused by Illinois Central's violation of the FSAA. The connecting knuckle of railcar WC 84867 was defective; Schweitzer testified that the lock lift portion of the pin lifter, which actually unlocks the knuckle, was likely cracked prior to the incident. Illinois Central does not dispute this fact. That the lock lift was cracked is consistent with Hardlannert's testimony that the pin lifter handle broke while he attempted to pull the stuck pin lifter a second time. Although Professor Barnett's affidavit sets out an opinion that "the fracture of the [lock lift] hook was not a proximate cause of [Hardlannert's] back injury," Hardlannert was "not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the [FSAA] [citations]." Crane, 395 U.S. at 166, 23 L. Ed. 2d at 180, 89 S. Ct. at 1708. Under the FELA, liability of a railroad is established if its "negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506, 1 L. Ed. 2d 493, 499, 77 S. Ct. 443, 448 (1957). We find it indisputable that a defect in Illinois Central's equipment had at least some "causative relationship"

13

with Hardlannert's back injury. <u>Baker</u>, 221 Ill. App. 3d at 134.

The record evidence foreclosed Illinois Central's defense that Hardlannert was completely responsible for his injury. To the contrary, we find as a matter of law that Hardlannert's injury was at least partially, if not wholly, caused by Illinois Central's violation of the FSAA. Hence, the circuit court properly granted his motion for summary judgment on the liability issue.

"In Use"

Illinois Central next contends that as a point of federal law, the FSAA did not apply to railcar WC 84867 because it was not "in use" under the statute when the incident occurred. Illinois Central argues that a railcar is not in use when engaged in switching operations such as those Hardlannert was performing. This presents an issue of first impression in Illinois. We conclude Illinois Central misreads the FSAA in its attempt to apply the "switching operations exception" developed in federal case law to circumstances involving a single railcar. To the extent certain federal cases apply the exception pertaining to the unit of equipment of a "train" to the unit of equipment of a "vehicle," we decline to follow those cases.

By its terms, the FSAA only limits what "a railroad carrier may use or allow to be used in any of its railroad lines" (49

U.S.C. §20302(a) (2000)) and, thus, only applies when the equipment it describes is "in use" (Brady v. Terminal R.R. Ass'n, 303 U.S. 10, 13, 82 L. Ed. 614, 617, 58 S. Ct. 426, 428 (1938)). To determine whether a unit of equipment is "in use," courts consider a number of factors, including primarily its "locat[ion] at the time of the accident and the activity of the injured party." Deans v. CSX Transportation, Inc., 152 F.3d 326, 329 (4th Cir. 1998). However, different units of equipment are regulated by different sections of the FSAA, and, for reasons that become clear when considering the statute overall, whether railroad equipment is "in use" depends on the unit of equipment the section at issue regulates.

An outline of the units of equipment regulated by the FSAA is helpful. Sections 20302(a)(1) to (a)(3) regulate the use of "vehicles," defined as "a car, locomotive, tender, or similar vehicle" (49 U.S.C. §20302(a) (2000)); an exemplary regulation is section 20302(a)(1)(A), which requires that vehicles be equipped with "couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles" (49 U.S.C. §20302(a)(1)(A) (2000)). Section 20302(a)(4) applies more specifically to one type of vehicle, "locomotives." 49 U.S.C. §20302(a)(4) (2000). However, section 20302(a)(5) applies more broadly to "trains";

15

that section makes clear that a train is composed of multiple "vehicles." It requires that certain proportions of "the vehicles in the train [be] equipped with" specific types of brakes. 49 U.S.C. §20302(a)(5) (2000).

Because the various units of equipment which the FSAA's provisions regulate are "used" in different ways, the application of a safety provision turns on the unit of equipment in use. For instance, it is apparent that a train, which as the statute makes clear is composed of multiple "vehicles," cannot be "in use" until the vehicles in the train have been coupled together in preparation for movement as a train. Prior to the completion of the coupling procedure, no train exists. A train is not "in use" while the various vehicles that constitute the unit of a "train" are being coupled. Thus, an exception to the FSAA's provisions regarding trains applies during switching operations, the very procedure through which a train is assembled.

In contrast, and more germane to this case, an individual "vehicle," be it "a car, locomotive, tender, or similar vehicle" (49 U.S.C. §20301(a) (2000)), implicates different safety rules pertaining to vehicles "in use." The regulations regarding the coupling requirements of a vehicle would make little sense otherwise; it is in the very process of coupling railcars during switching operations that couplers perform an essential function.

16

Thus, vehicles are "in use" during switching operations designed to form a train, while a train is not formed until the coupling procedure is completed.  The differing sections pertaining to the different units of equipment concern safety features that come into play when the various units of equipment are "in use," trains versus vehicles.

A careful reading of federal case law highlights this distinction.  As early as its decision in United States v. Erie R.R. Co., 237 U.S. 402, 59 L. Ed. 1019, 35 S. Ct. 621 (1915), the Supreme Court recognized that the applicability of the FSAA turned on the unit of equipment at issue:

> "It will be perceived that the air-brake provision deals with running a train, while the other requirements relate to hauling or using a car.  In one a train is the unit and in the other a car.  As the context shows, a train in the sense intended consists of an engine and cars which have been assembled and coupled together for a run or trip along the road.  When a train is thus made up and is proceeding on its journey it is within the operation of the air-brake provision.  But it is otherwise with the various movements in

17

railroad yards whereby cars are assembled and coupled into outgoing trains, and whereby incoming trains which have completed their run are broken up. These are not train movements, but mere switching operations, and so are not within the air-brake provision. The other provisions calling for automatic couplers and grab irons are of broader application and embrace switching operations as well as train movements, for both involve a hauling or using of cars." Erie R.R. Co., 237 U.S. at 407-08, 59 L. Ed. at 1023, 35 S. Ct. at 624.

Thus, the Erie Court recognized that while a train is not in use during switching operations because the purpose of the switching operation is to assemble the unit of equipment termed a "train," individual railcars are in use during such operations. During switching operations, the provisions applicable to a railcar and another vehicle come into play because that unit of equipment is "in use" during switching operations. See, e.g., O'Donnell v. Elgin, Joliet & Eastern Ry. Co., 338 U.S. 384, 394, 94 L. Ed. 187, 194, 70 S. Ct. 200, 206 (1949) ("the plaintiff was entitled to a peremptory instruction that to equip a car with a coupler

18

which broke in the switching operation was a violation of the Act"); Robb v. Burlington Northern & Santa Fe Ry. Co., 100 F. Supp. 2d 867, 869-70 (N.D. Ill. 2000) (noting that the "switching exclusion" applies only to "a worker who was injured on a 'completed train,' " not a worker "injured on a car that was not part of a completed train"); Williams v. Norfolk Southern Ry. Co., 126 F. Supp. 2d 986, 991-92 (W.D. Va. 2000).

Illinois Central's argument that railcar WC 84867 was not "in use" under the FSAA is founded entirely on Phillips v. CSX Transportation, Inc., 190 F.3d 289 (4th Cir. 1999) (per curiam). We find the analysis employed in Phillips inapplicable by its very language to this case.

In Phillips, the plaintiff injured his back while connecting several railcars into a train when the handrail he was using to climb into one of the railcars gave way. Phillips, 190 F.3d at 287. The plaintiff filed suit under the FSAA and the FELA, alleging that the handrail failure amounted to a violation of the FSAA. Phillips, 190 F.3d at 287. The district court granted the plaintiff's partial summary judgment motion on liability, and the defendant appealed. Phillips, 190 F.3d at 287. The Fourth Circuit reversed, noting that the key issue in the case was determining "the point at which switching operations end and a train becomes 'in use.' " Phillips, 190 F.3d at 289. By its

very language, it appears the Fourth Circuit's framework of its analysis concerns a train as the unit of equipment. Ultimately, the Phillips court concluded that "the train upon which [the plaintiff] was injured was not 'in use' at the time of his injury."[2] Phillips, 190 F.3d at 290.

The issue in this case is whether a vehicle, a singular railcar, was in use. As discussed above, railcars themselves are not outside the realm of the FSAA during switching operations. Williams, 126 F. Supp. 2d at 992. Holding otherwise would nullify the FSAA during switching operations, contrary to provisions in the FSAA enacted by Congress specifically to promote "safety in the yard during switching operations" such as those regarding train couplers. Robb, 100 F. Supp. 2d at 870. Although the Phillips court found the "train" upon which the

---

[2] In Phillips, the plaintiff's claim was founded on a violation of the handrail provision of the FSAA (49 U.S.C. §20302(a)(2) (2000)). Although the handrail provision also appears to regulate the use of "vehicles," we have no occasion to consider that provision here. We reject any implicit suggestion by Illinois Central that the Phillips decision should guide our analysis of the coupler provision of the FSAA such that it is only applicable when a "train" is in use.

20

plaintiff was injured was not in use, the railcar that caused Hardlannert's injury was in use during switching operations. Thus, the FSAA applied to the defective condition on railcar WC 84867 as a matter of law; accordingly, Hardlannert was entitled to judgment on liability.

## CONCLUSION

The circuit court properly granted partial summary judgment in favor of Hardlannert on Illinois Central's liability under the FSAA. On the record evidence, no question of material fact is raised that Hardlannert acted negligently while attempting to open the connecting knuckle of railcar WC 84867, which the physical evidence revealed to be in a defective condition. The defective condition of the connecting knuckle constituted a violation of the FSAA by Illinois Central; even if Hardlannert could be found to have acted negligently in attempting to open both knuckles of the railcars to be coupled, no reasonable jury could find his negligence to be the sole cause of his back injury because the defective condition of the pin lifter to the knuckle of railcar WC 84867 is causally related to Hardlannert's injury. Further, because the coupling provision of the FSAA applies to the unit of equipment at issue in this case, an individual railcar, railcar WC 84867 was "in use" at the time of the incident.

Affirmed.

HALL, P.J., and PATTI, J., concur.

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

WILLIAM HARDLANNERT,

Plaintiff-Appellee,

v.

ILLINOIS CENTRAL RAILROAD COMPANY,

Defendant-Appellant.

 **No. 1-09-1291**

**Appellate Court of Illinois**
**First District, First Division**

**Filed: April 19, 2010**

**JUSTICE GARCIA delivered the opinion of the court.**

**HALL, P.J., and PATTI, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Eileen Mary Brewer, Judge Presiding**

For PLAINTIFF-
APPELLEE

Steven J. Scott
MacCabe & McGuire
77 West Wacker Dr., Suite 3333
Chicago, Illinois  60601

For DEFENDANT-
APPELLANT

Ryan Brennan
The Brennan Law Firm, P.C.
19 Bronze Pointe
Belleville, Illinois 62226

**William B. Kohn**
**150 North Walker, Suite 1400**
**Chicago, Illinois   60606**