ABRASIVES–SOUTH, INC., Plaintiff,

v.

**Marty KORTE, Defendant.**

No: 2:16–cv–768–RMG

United States District Court, D. South Carolina.

Signed 10/4/2016

John Hughes Cooper, John Townsend Cooper, John Hughes Cooper Law Office, Mt. Pleasant, SC, John B. Kern, John B. Kern International Law, Charleston, SC, for Plaintiff.

Russell Scott Abrams, K & L Gates (Chas), Neil S. Haldrup, Elmore and Wall, Charleston, SC, Morgan S. Templeton, Charleston, SC, for Defendant.

## ORDER

Richard M. Gergel, United States District Court Judge

This matter is before the Court on Defendant's motion for summary judgment. (Dkt. No. 19). For the reasons below, the Court GRANTS the motion for summary judgment.

## Background

Plaintiff ASI is a North Charleston, South Carolina-based manufacturer, processer, and distributor of abrasive products (*e.g.,* sandpaper). Defendant Marty Korte worked for Plaintiff as its national sales manager. In March 2012, Defendant Korte left Plaintiff's employ. At that time, Plaintiff's president, Jim Carter, confronted Defendant Korte regarding suspicions that he "had been providing information to other competitors and vendors." (Dkt. No. 15–1 at 1–2). Defendant Korte denied any wrongdoing.

In October 2012, Carter wrote a letter to Defendant AWUKO's president regarding his suspicions that AWUKO had improperly paid Korte. (Dkt. No. 15–1 at 2). Defendant AWUKO's president subsequently denied any wrongdoing. The business relationship between Plaintiff and Defendant AWUKO deteriorated, and on October 29, 2012, Defendant AWUKO filed for declaratory negative relief in Göttingen District Court in Germany.

On November 14, 2012, AWUKO's president received a letter from Plaintiff's then-counsel, which stated

[I]t is not disputed that, unknown to my client, your company paid my client's sales representative substantial sums of money to promote your product to the exclusion of other brands that my client carries. This resulted in an inferior

product being marketed by my client, which resulted in lost business. (Dkt. No. 16–2 at 2).

On January 25, 2013, Plaintiff's German counsel sent a letter to AWUKO's German counsel stating that he had had the opportunity to "intensively discuss this matter with my co-counsel ... as well as our client." (Dkt. No. 16–13 at 2). The letter goes on to state that counsel "was quite surprised to learn that AWUKO explicitly admitted in writing [to] having made substantial payments to Marty Korte." (Dkt. No. 16–3 at 3).

On February 4, 2013, counsel for Plaintiff and Defendant AWUKO met in Germany to resolve the German lawsuit. At this meeting, Defendant AWUKO's counsel allegedly admitted that AWUKO "had had an ongoing business relationship with Mr. Korte, including paying him and receiving information." (Dkt. No. 15–2 at 2).

On February 1, 2016, Plaintiff filed this action in the Charleston County Court of Common Pleas, and the case was removed to this Court on March 10, 2016. (Dkt. No. 1). Defendants AWUKO and Wandmacher filed a motion to dismiss (Dkt. No. 11), which the Court granted due to the running of the relevant three-year statutes of limitations. (Dkt. No. 17). Defendant Korte subsequently filed this motion to dismiss based on the statutes of limitations. (Dkt. No. 19). While this motion was pending, Plaintiff filed a Rule 59(e) motion to reconsider the Court's order dismissing Defendants AWUKO and Wandmacher. (Dkt. No. 24). The Court denied Plaintiff's motion for reconsideration. (Dkt. No. 30).

### Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is

no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324, 106 S.Ct. 2548. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### Discussion

■ The applicable statutes of limitations for Plaintiff's claims against Defendant Korte are all three years. S.C. Code Ann. §§ 39–8–70 (violations of trade secrets claim); 15–3–530 (claims of fraud and breach of fiduciary duty); 39–5–150 (SCUTPA violations claims).

■ As the Court previously explained, under "the discovery rule, the statute of limitations begins to run from the date the injured party either knows *or should know*, by the exercise of reasonable diligence, that a cause of action exists for

the wrongful conduct." *True v. Monteith,* 327 S.C. 116, 489 S.E.2d 615, 616 (1997) (emphasis added). The "exercise of reasonable diligence" requires that the injured party "act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist." *Dean v. Ruscon Corp.,* 321 S.C. 360, 468 S.E.2d 645, 647 (1996). The date on which the discovery of a cause of action should have been made is an objective question, *Bayle v. S. Carolina Dep't of Transp.,* 344 S.C. 115, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001), and to the extent that there is no conflicting evidence regarding whether a claimant should have known that a cause of action existed, resolution of the question is appropriate at summary judgment. *See Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672, 681 (2000).

In a July 12, 2012 email to Korte, Jim Carter wrote:

> You still have files and ASI information that is the property of Abrasives–South, Inc. This is documented by numerous e-mails I have copies of. You accessed our server files (Abrasives–South, Inc. Property) via your VPN and e-mail account and sent many confidential files (property of Abrasives–South, Inc.) to your personal e-mail.
>
> . . . .
>
> . . . It is now clear to me that the many visits to Klingspor were for the benefit of Marathon, Tucker Mktg (YOU), and not for ASI. After all you are now working for Klingspor and using ASI documents and information from our server files that are still the property of Abrasives–South, Inc. to benefit you and Kingspor.
>
> . . . .
>
> I have also learned that while accepting compensation from ASI to call on

the Panel and metal sheet market you were also collecting money from our new supplier (Awuko) behind my back. . . .

> . . . .
>
> You collected $2,000 per month from Awuko for at least four months for a total of $8,000.00. This puts my total at $22,000 in [overpayments] and fraudulent representation by you.
>
> Please know that an important part of a legal solution is the right of discovery. If this is the path you choose I will have the legal right to request and obtain all correspondence, files, e-mails, etc. This will hold true for you, Tucker Mktg, Klingspor, Awuko and any entity or individual that may have had dealings with you.

(Dk. No. 19–1).

In his response, Korte admitted receiving payments from AWUKO and denied engaging in any improper conduct related to Plaintiff's files or other property. (*Id.* ).

The following facts come from Jim Carter's affidavits in this action and, for the purposes of this action, are uncontroverted:

(1) When Plaintiff and AWUKO entered into business agreements in April 2011, Carter "specifically and unequivocally forbade [AWUKO] from paying any money directly to Korte ... because [he] wanted [Korte's] undivided loyalty." (Dkt. No. 15–1 at 1).

(2) After Korte stopped working for Plaintiff in March 2012, Plaintiff's president had sufficient suspicion that Korte was "disloyal to [Plaintiff]" by "providing information to other competitors and vendors" to confront him. (Dkt. No. 15–1 at 1–2). Specifically, Plaintiff was concerned that "Korte retained custody of [one of Plaintiff's] laptop computer[s,]

which contained years['] worth of marketing intelligence and [t]rade [s]ecrets, even after [Korte] had ... gone to work for a competitor." (Dkt. No. 24–1 at 1). "Korte denied any wrongdoing." (Dkt. No. 15–1).

(3) A July 2012 meeting in which one of AWUKO's salesmen referenced AWUKO's "investment" in Korte prompted Carter to contact AWUKO's president regarding his suspicions that AWUKO were paying Korte. (Dkt. No. 15–1 at 2). AWUKO's president allegedly denied that any such payments occurred. (*Id.*)

(4) In October 2012, Carter "t[ook] a shot in the dark about the allegation of payments" and again "contacted AWUKO's president regarding payments to Korte." (*Id.*). At this time, AWUKO's president allegedly denied that AWUKO payed Korte, instead stating that Defendants "had covered some 'hoped for' marketing expenses ... so Korte could attend a trade show." (*Id.*).

(5) At some point before November 14, 2012, AWUKO acknowledged "the fact of the payments" (Dkt. No. 24–1 at 3), and by January 25, 2013, Plaintiff's counsel contacted AWUKO to "request[ ] an explanation as to the purpose of the payments." (*Id.* at 4).

Plaintiff argues that "[k]nowledge of Korte's improper motive and acts accompanying payments between Korte and AWUKO were necessary prerequisites to put ASI on notice of the fact that it may have a claim against Korte." (Dkt. No. 25 at 4). Despite Plaintiff's arguments to the contrary, factual certainty and actual knowledge are not the only factors that cause statutes of limitations to run. As stated above, the discovery rule starts the clock when "the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist." *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645, 647 (1996). Therefore, the proper question before the Court is whether the abovementioned uncontroverted facts would put a reasonable person on notice that claims against Korte might exist.

Based on the July 2012 email, Plaintiff knew (1) Korte sent "confidential files" to his personal email; (2) used Plaintiff's documents to while working for a competitor; (3) deleted files from one of Plaintiff's laptop computers; and (4) received monthly payments from AWUKO while he worked for Plaintiff. Based on Korte's reply to the July 2012 email, Plaintiff knew that AWUKO directly paid Korte. And based on Plaintiff's own affidavits, (1) Plaintiff expressly forbade AWUKO from paying Korte when they entered into their 2011 agreements due to concerns regarding Korte's loyalty; and (2) sometime before the end of December 2012, AWUKO reversed course and acknowledged that it paid Korte directly, after repeated denials.

A reasonable person armed with these facts standing in Plaintiff's shoes would be on notice that a claim against Korte might exist. That reasonable person may not know the precise contours of the potential claims, but this is precisely the type of circumstance that requires a plaintiff to "act with some promptness" in ascertaining the viability of and pursuing its claims. *Dean*, 468 S.E.2d at 647.

In the most plaintiff-friendly interpretation of these uncontroverted facts and circumstances, Plaintiff should have known it might have had a claim against Defendant Korte no later than January 2013. The applicable three-year statutes of limitations began to run at that time. Because Plaintiff commenced this action on Febru-

ary 1, 2016, its claims against Defendant Korte are time-barred.

### Conclusion

For the abovementioned reasons, the Court GRANTS Defendant Korte's motion for summary judgment (Dkt. No. 19) and the case is dismissed with prejudice.

**AND IT IS SO ORDERED.**